UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

JOSEPH DEGROOT, individually and
on behalf of all others similarly situated,

        Plaintiff,

 v.                                                  Case No. 19-C-951

CLIENT SERVICES, INC.,

        Defendant.

---

## DECISION AND ORDER GRANTING MOTION TO DISMISS

---

Plaintiff Joseph Degroot, individually and on behalf of all others similarly situated, filed this action on July 1, 2019, alleging that Defendant Client Services, Inc. (CSI) violated the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. §§ 1692, *et seq.*, when CSI sent a letter to Degroot seeking to collect a debt he owed to Capital One Bank (USA), N.A. Presently before the court is CSI's motion to dismiss the amended complaint for lack of standing and for failure to state a claim. For the reasons that follow, CSI's motion will be granted.

### LEGAL STANDARD

CSI moves to dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). A Rule 12(b)(1) motion challenges the jurisdiction of this court of the subject matter related in the complaint. Fed. R. Civ. P. 12(b)(1). To survive a Rule 12(b)(1) motion, the plaintiff must establish that the jurisdictional requirements have been met. *Schaefer v. Transp. Media, Inc.*, 859 F.2d 1251, 1253 (7th Cir. 1988). The proponent of federal jurisdiction must "prove those jurisdictional facts by a preponderance of the evidence." *Meridian Sec. Ins. Co. v. Sadowski*, 441 F.3d 536, 543 (7th

Cir. 2006). When the moving party "launches a factual attack against jurisdiction, the district court may properly look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists." *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 444 (7th Cir. 2009) (internal quotation marks and citations omitted).

A Rule 12(b)(6) motion tests the sufficiency of the complaint to state a claim upon which relief can be granted. *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990); *see* Fed. R. Civ. P. 12(b)(6). When reviewing a motion to dismiss under Rule 12(b)(6), the court must accept all well-pleaded factual allegations as true and draw all reasonable inferences in the light most favorable to the nonmoving party. *Gutierrez v. Peters*, 111 F.3d 1364, 1368–69 (7th Cir. 1997); *Mosley v. Klincar*, 947 F.2d 1338, 1339 (7th Cir. 1991). Rule 8 mandates that a complaint need only include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The plaintiff's short and plain statement must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). While a plaintiff is not required to plead detailed factual allegations, he must plead "more than labels and conclusions." *Id.* A simple, "formulaic recitation of the elements of a cause of action will not do." *Id.* A claim is plausible on its face when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009).

**ALLEGATIONS OF THE AMENDED COMPLAINT**

Degroot, a Wisconsin resident, originally incurred and defaulted on a financial obligation owed to Capital One Bank (USA), N.A. CSI, a corporation formed under the laws of Missouri, regularly engages in the collection of defaulted consumer debts owed to others.

2

On August 6, 2018, AllianceOne Receivables Management, Inc., a debt collector, mailed a letter to Plaintiff. The letter advises that Capital One referred Degroot's account to AllianceOne for collections. The letter states: "The amount of your debt is $425.86. Please keep in mind, interest and fees are no longer being added to your account. This means every dollar you pay goes towards paying off your balance." Dkt. No. 8-1 at 2. Degroot alleges that he understood the AllianceOne letter to inform him that Capital One had recently charged-off his account, meaning that it would no longer add accruing interest, late charges, or other fees to the debt for any reason.

Capital One later assigned, placed, or transferred the account to CSI for collection. CSI mailed Degroot a letter dated March 11, 2019. This letter was CSI's first written communication with Degroot to collect the debt. The top left-hand corner of the letter contained CSI's logo and address, as well as the following information related to Degroot's debt:

> CURRENT CREDITOR: CAPITAL ONE BANK (USA), N.A.
> ACCOUNT NUMBER: XXXXXXXXXXXX9018
> BALANCE DUE: $425.86

Dkt. No. 8-2 at 2. The letter notes "Our client, CAPITAL ONE BANK (USA), N.A., has placed the above account with our organization for collections" and summarizes Degroot's current balance:

> Balance Due At Charge-Off: $425.86
> Interest: $0.00
> Other Charges: $0.00
> Payments Made: $0.00
> **Current Balance: $425.86**

*Id.* The third page of the letter offered an account resolution. It provided:

NEW INFORMATION ON YOUR ACCOUNT

Your Account Balance: $425.86

Your Account Resolution Offer: $213.00

<u>ACCOUNT RESOLUTION OFFER</u>

3

> We are offering you the ability to resolve your account balance for the amount of $213.00. To accept this offer, our office must receive payment within forty (40) days of the date of this notice. This offer is contingent upon timely receipt of your payment. If payment is not received in our office within forty (40) days of the date of this notice, this offer will be withdrawn and will be deemed null and void, with the remainder of the balance being due and owing. We are not obligated to renew this offer. Please note that no interest will be added to your account balance through the course of Client Services, Inc. collection efforts concerning your account. This offer does not affect your right to dispute the debt as described on the previous page.

*Id.* at 4.

Degroot filed this putative class action lawsuit on July 1, 2019, on behalf of himself and all other persons to whom CSI mailed its letter at a Wisconsin address. Degroot alleges that CSI's letter falsely implies to unsophisticated consumers that Capital One would begin to add interest and possibly fees to their previously charged-off debts if the consumers fail to resolve their debts with CSI and it elects to stop its collection efforts within 40 days of the date on the collection letter. He claims that he was "confused by the discrepancy between the AllianceOne letter's statement that 'interest and fees are no longer being added to your account' and the 3/11/19 Letter's implication that Capital One would begin to add interest and possibly fees to the Debt once [CSI] stopped its collection efforts on an unspecified date." Am. Compl. ¶ 39, Dkt. No. 8. Degroot asserts that the letter uses false, deceptive, and misleading representations or means to collect a debt in violation of 15 U.S.C. § 1692e and fails to disclose the amount of the debt in a clear and unambiguous fashion in violation of 15 U.S.C. § 1692g.

## ANALYSIS

### A. Standing

CSI first asserts that Degroot lacks Article III standing to bring this lawsuit. Article III of the United States Constitution limits the jurisdiction of federal courts to actual "cases" and

"controversies" brought by litigants who demonstrate standing. *Groshek v. Time Warner Cable, Inc.*, 865 F.3d 884, 886 (7th Cir. 2017). "The 'irreducible constitutional minimum of standing' consists of three elements: injury in fact, causation, and redressability." *Id.* (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992)). The Supreme Court held in *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016), that "Article III standing requires a concrete injury even in the context of a statutory violation." *Id.* at 1549. The plaintiff bears the burden of pleading sufficient factual allegations that "plausibly suggest" each element. *Groshek*, 865 F.3d at 886 (citation omitted).

CSI asserts that Degroot has not alleged that he suffered or faced a real risk of suffering a concrete harm. It relies on *Casillas v. Madison Avenue Associates., Inc.*, 926 F.3d 329 (7th Cir. 2019), to support its argument. In *Casillas*, Madison Avenue Associates, Inc., a debt collector, sent Casillas a letter that described the process that the FDCPA requires for a debtor to obtain verification of a debt but "neglected to specify that Casillas must communicate in writing to trigger the statutory protections." *Id.* at 331. The court noted that the only harm Casillas claimed to have suffered was the receipt of an incomplete letter and that Madison's mistake was nothing more than a procedural violation. *Id.* at 331–32. Finding "no harm, no foul," the court explained

> Casillas did not allege that Madison's actions harmed or posed any real risk of harm to her interest under the Act. She did not allege that she tried to dispute or verify her debt orally and therefore lost or risked losing the statutory protections. Indeed, she did not allege that she ever even considered contacting Madison . . . . She complained only that her notice was missing some information that she did not suggest that she would ever have used.

*Id.* at 334. The Seventh Circuit held that Casillas' procedural allegation was insufficient to establish standing.

In this case, Degroot does not allege that CSI failed to disclose a statutory requirement like the plaintiff in *Casillas*. Instead, he asserts that he suffered an informational injury. While the *Casillas* court found that a plaintiff's procedural allegation is not sufficient on its own to establish standing, it recognized that an "informational injury can be concrete when the plaintiff is entitled to receive and review substantive information." *Id.* at 335 (quoting *Robertson v. Allied Solutions*, 902 F.3d 690, 697 (7th Cir. 2018)). Degroot's FDCPA claims are based on an allegedly deceptive letter, not an incomplete one. Degroot alleges that he was "confused by the discrepancy between the AllianceOne Letter's statement that 'interest and fees are no longer being added to your account' and the 3/11/19 Letter's implication that Capital One would begin to add interest and possibly fees to the Debt once CLIENT SERVICES stopped its collection efforts on an unspecified date." Am. Compl. ¶ 39, Dkt. No. 8. He asserts that CSI's letter caused him concrete harm because he was deprived of truthful, non-deceitful information regarding the debt being collected from him. Degroot claims that CSI's letter is materially false, deceptive, and misleading to an unsophisticated consumer because a fear of other charges might influence a rational person with limited financial resources to pay the Capital One debt over an otherwise identical debt which accurately implied the balance remained static.

The alleged FDCPA violation in this case is not a failure on the debt collector's part to provide required statutory disclosures to debtors; it is a substantive violation by a debt collector to improperly entice debtor action. Degroot alleges that CSI sent him the type of false, deceptive, and misleading letter that Congress sought to prevent through the FDCPA. The amended complaint also contains allegations that Degroot was personally confused and harmed by the letter. In short,

6

Degroot has alleged that CSI's actions harmed or posed a real risk of harm to his interests under the FDCPA. The court finds that Degroot has standing to bring the claims in his amended complaint.

**B. FDCPA Claims**

Assuming he has standing, CSI also argues that Degroot has failed to state a claim upon which relief can be granted. The FDCPA "is designed to protect consumers from abusive and unfair debt collection practices." 15 U.S.C. § 1692(e). In an effort to accomplish this goal, § 1692e prevents the use of false, deceptive, or misleading representations or means in connection with the collection of a debt, and "§ 1692g(a) provides that in either the initial communication with a consumer in connection with the collection of a debt or another written notice sent within five days of the first debt, a debt collector must provide specific information to the consumer," including "the amount of the debt." *Janetos v. Fulton Friedman & Gullace, LLP*, 825 F.3d 317, 320 (7th Cir. 2016).

In this circuit, "[c]laims brought under the Fair Debt Collection Practices Act are evaluated under the objective 'unsophisticated consumer' standard," *Gruber v. Creditors' Protection Serv., Inc.*, 742 F.3d 271, 273 (7th Cir. 2014) (citations omitted), as opposed to the "least sophisticated consumer" standard applied in some other circuits. This is because the Seventh Circuit "[does not] believe that the unsophisticated debtor standard should be tied to the very last rung on the sophistication ladder." *Pettit v. Retrieval Masters Creditor Bureau, Inc.*, 211 F.3d 1057, 1060 (7th Cir. 2000) (internal quotation marks and citation omitted). Though the unsophisticated consumer may be "uniformed, naive, [and] trusting," *Veach v. Sheeks*, 316 F.3d 690, 693 (7th Cir. 2003), "she has rudimentary knowledge about the financial world and is capable of making basic logical deductions and inferences." *Wahl v. Midland Credit Mgmt., Inc.*, 556 F.3d 643, 645 (7th Cir. 2009)

7

(internal quotation marks and citations omitted); *see also Pettit*, 211 F.3d at 1060 (noting that the unsophisticated consumer has at least a "rudimentary knowledge about the financial world, is wise enough to read collection notices with added care, possesses 'reasonable intelligence,' and is capable of making basic logical deductions and inferences"). The Seventh Circuit accordingly "disregard[s] unrealistic, peculiar, bizarre, and idiosyncratic interpretations of collection letters." *Id.*; *Gruber*, 742 F.3d at 274. The unsophisticated consumer "is not a dimwit" and is "reasonable," but he is not a gifted linguist who closely parses a debt collection letter like a patent lawyer construes a patent. *Lox v. CDA, Ltd.*, 689 F.3d 818, 822 (7th Cir. 2012); *Turner v. J.V.D.B. & Assocs., Inc.*, 330 F.3d 991, 997 (7th Cir. 2003); *cf. Russell v. Equifax A.R.S.*, 74 F.3d 30, 34 (2d Cir. 1996). If it is clear from the face of the letter in question that it is not false, misleading, or deceptive, and no significant fraction of the population would be misled by it, the court may dismiss the case without looking at extrinsic evidence. *Koehn v. Delta Outsource Group, Inc.*, 939 F.3d 863, 864 (7th Cir. 2019).

Degroot alleges that CSI's letter is false, deceptive, and misleading to the unsophisticated consumer and fails to clearly state the amount of the debt owed in violation of 15 U.S.C. §§ 1692e and 1692g. In particular, Degroot claims that the letter falsely implies that Capital One would increase the current balance of the debt by adding interest and fees if Degroot failed to accept CSI's account resolution offer or otherwise pay the debt within 40 days, even though the debt was static. CSI asserts that the letter informed Degroot of the amount owed and provided him with an itemization of costs. It maintains that, when viewed in its entirety, the letter is not false, deceptive, or misleading.

8

CSI's letter is not false, misleading, or deceptive. The itemization showing $0.00 owed in interest and other charges does not imply that CSI or Capital One will increase the interest if the "Account Resolution Offer" is not paid. That CSI will not increase the interest is made clear by the statement "Please note that no interest will be added to your account balance through the course of Client Services, Inc. collection efforts concerning your account." Dkt. No. 8-2 at 4. The letter says nothing about whether interest or other charges could increase in the future, but that does not make it misleading or deceptive.

Degroot's claim is based on the assumption that, because Capital One "charged off" the debt, it was no longer possible that interest or other charges could accrue regardless of whether payment was ever made. In other words, the debt was never going to increase, and by including entries for "interest" and "other charges" CSI was falsely implying it might increase in the future if not paid. Leaving aside whether an unsophisticated consumer would have an understanding of what it means to "charge off" a debt, the plain fact is that interest and other charges could increase the amount of the debt if it remained unpaid and outstanding. As CSI notes, "That a debt is charged-off does not necessarily imply that the debt would be perpetually static." Def.'s Reply Br. at 7, Dkt. No. 15 (citing *Peters v. Fin. Recovery Servs., Inc.*, 46 F. Supp. 3d 915, 918 (W.D. Mo. 2014) ("When a creditor charges-off an account this does not prevent the accrual of interest at the state statutory rate. Thus, even if the right to charge interest at the contractual rate was waived by GE's failure to continue to send post charge-off billing statements, statutory interest could still be charged.")).

In Wisconsin, a creditor is generally entitled to interest on a liquidated claim from the time payment is due at the legal rate of 5% even in the absence of an agreement. Wis. Stat. § 138.04; *see also Estreen v. Bluhm*, 79 Wis. 2d 142, 158–59, 255 N.W. 2d 473 (1977). Moreover, if the creditor

9

eventually decides to bring suit and obtain a judgment, awards of statutory costs and postjudgment interest can also increase the amount of the debt. Wis. Stat. §§ 814.01, 815.05(8). Thus, even if Degroot did believe that nonpayment could eventually cause his debt to grow, he would not necessarily have been wrong. But the plain fact is that CSI said nothing about what would occur after CSI stopped servicing it. CSI may not have known what would happen, but in any event was not required to say more. *See Dick v. Enhanced Recovery Co., LLC*, No 15-cv-2631, 2016 WL 5678556, at *5 (E.D.N.Y. Sept. 28, 2016) ("[T]here is no requirement that every statement in a debt collection notice include an extra assurance that the fact stated will not change in the future."). By saying nothing, it was not misleading Degroot.

The court reached the same conclusion as to a virtually identical letter in *Delgado v. Client Services, Inc.*, No. 17-c-4364, 2018 WL 1193741 (N.D. Ill. Mar. 7, 2018), and I adopt that court's reasoning as well:

> The language in the Letter is clear. It displays the amount due at the top, and includes an itemization in the body of the letter, including "Interest: 0.00" and "Other Charges: 0.00." Doc. 33-1, Ex. B. Rather than making a false, misleading, or deceptive statement, the letter sets forth the amount due and provides an accounting of that amount, making it explicit that no part of the amount due includes interest or other charges. A virtually identical fact pattern occurred in *Dick v. Enhanced Recovery Co.*, where the court addressed whether a collection letter that contained the same type of itemization (there, the terms were "Interest Accrued" and "Non-Interest Charges and Fees") was misleading under § 1692e. No. 15-CV-2631 (RRM) (SMG), 2016 WL 5678556 (E.D.N.Y. Sept. 28, 2016). There, the court held that the letter was not false, deceptive, or misleading, noting that "the [l]etter does not leave [the plaintiff] in doubt of the nature and legal status of the underlying debt; nor does it impede the consumer's ability to respond to or dispute collection." *Id.* at *4. The situation is the same here. To find otherwise places debt collectors between a rock and a hard place, where they cannot simply list the amount owed, for fear of being misleading, but likewise, cannot breakdown the amount into categories either, for fear of being misleading. Debt collectors would be damned if they do and damned if they don't. This is clearly not what Congress intended the FDCPA to do—essentially turn debt collectors into a modern-day version of Goldie Locks, who cast about searching for the letter that is just right, not listing too little information

> or too much. Indeed, Client Services has done precisely what the Seventh Circuit recommends by clearly itemizing the various components of the debt. *See Fields v. Wilber Law Firm, P.C.*, 383 F.3d 562, 566 (7th Cir. 2004)(simply stating the total debt without indicating that it included attorneys' fees and collection costs gives a false impression of the character of the debt, and noting "[o]ne simple way to comply with § 1692e and § 1692f in this regard would be to itemize the various charges that comprise the total amount of the debt.").

*Id.* at *3. The court in *Delgado* also found significant the fact that the letter in that case listed a "payment made" of $20, while at the same time listing the interest at $0.00. This was significant, the court thought, because "[i]f Delgado believed that the Letter was threatening to assess interest and collection fees, it would not make sense that the amounts remained at zero after collection had already begun." *Id.* at *4. Whether an unsophisticated consumer would so conclude is questionable, but in any event, the court concluded the letter was not false, deceptive, or misleading.

In this court's view, it takes a fair amount of sophistication to even come up with Degroot's argument. Judge Cogan from the Eastern District of New York reached the same conclusion concerning CSI's letter applying that circuit's "least sophisticated" consumer standard. *Doneava v. Client Servs., Inc.*, No. 10-cv-6595, 2019 WL 3067108 (E.D.N.Y. July 12, 2019) ("Indeed, a lawyer in search of ambiguity is even more likely than a consumer in search of ambiguity to find fault with this entirely accurate and innocuous debt collection letter that does not resemble the kind of debt collection abuses that inspired the FDCPA."). In another FDCPA case involving CSI decided only nine days earlier, Judge Cogan offered the following caution:

> We cannot lose sight of the consequences of these creative exercises—the cost of litigation in the collection industry logically must increase the cost of credit, especially to the least sophisticated consumer, as at least some of those costs will be passed on. *See Akoundi v. FMS, Inc.*, No. 14-cv-366, 2014 WL 3632008, at *3 n.1 (S.D.N.Y. July 22, 2014) ("Imposing liability for technical falsehoods that have no bearing on the debt or the ability to dispute it furthers no conceivable consumer interest and only increases the cost of credit by subjecting debt collectors to frivolous claims.") (internal quotation marks omitted). That is fine if it is necessary to protect

11

the least sophisticated consumer. It is what Congress intended in the FDCPA, balancing a higher cost of credit or denial credit to some consumers for the protection of all least sophisticated consumers. But if courts interpret the FDCPA to have as low a bar as plaintiff's counsel argues here, they would end up hurting the least sophisticated consumer by making her pay higher interest rates, collection costs, or depriving her of access to credit at all, rather than helping her.

*Ocampo v. Client Servs., Inc.*, No. 18-cv-4326, 2019 WL 2881422, at *3 (E.D.N.Y. July 3, 2019). This court agrees.

As Degroot points out, other courts have concluded otherwise, including courts in this circuit. *See, e.g.*, *Duarte v. Client Servs., Inc.*, No. 18-cv-1227, 2019 WL 1425734 (N.D. Ill. March 29, 2019); *Driver v. LJ Ross Assocs., Inc.*, No. 18-cv-00220-MPB-RLY, 2019 WL 4060098 (S.D. Ind. Aug. 28, 2019); *Virden v. Client Servs., Inc.*, No. 5:19-CV-00329, 2019 WL 4862066 (N.D. Ohio Oct. 2, 2019). But this just means that other district courts disagree, which means there is good reason to appeal in order to obtain clarification in this important area of law.

## CONCLUSION

For these reasons, CSI's motion to dismiss (Dkt. No. 10) is **GRANTED**. The Clerk is directed to enter judgment of dismissal forthwith.

**SO ORDERED** this 15th day of January, 2020.

s/ William C. Griesbach
William C. Griesbach, District Judge
United States District Court